CHAMPION et al. v. RECKNAGEL et al.

(Supreme Court, Appellate Division, Second Department.    June 6, 1896.)

ACCOUNT STATED—WHAT CONSTITUTES.

Plaintiffs entered into a contract with defendants to sell, on joint account, firecrackers to be shipped from China, the profits to be shared equally.    Defendants agreed to advance the necessary money, and plaintiffs were to sell the goods.    The proceeds of sales were paid to defendants, who from time to time rendered accounts to plaintiffs purporting to show the cost of importation and other items of expense paid by defendants.    In each instance where the account showed a profit, plaintiffs accepted their share, and did not question the correctness of the charges for several years, when they disputed the accuracy of the items for cost of importation.    It appeared that many of the firecrackers were sold before arrival, and that it was therefore essential for plaintiffs to know the probable cost of importation, which defendants accordingly estimated.    In addition to the joint account, defendants kept a separate account, to which was credited the estimated cost of importation, and to which was debited the actual cost.    This account showed that the actual cost was less than the estimated cost in each instance, though the joint account showed a loss on about half of the importations.    In reply to an inquiry by plaintiffs as to the cost of the firecrackers, defendants wrote: "By cost to the joint account we mean the actual cost, without any profit to us."    Defendants concealed from plaintiffs the difference between the estimated cost and the actual cost.    By appropriating to themselves such difference, defendants received more than two-thirds of the profits of the business, instead of one-half, as provided by the contract.    Held, that the accounts rendered by defendants to plaintiffs did not constitute an account stated.

.  Appeal from city court of Brooklyn, special term.

Action by Champion and another against Recknagel and another for an accounting.    From the judgment setting aside the accounts rendered by defendants to plaintiffs, and from an order dismissing the defendants' counterclaim, based on such accounts, and rendering judgment in favor of plaintiffs for $1,356.83, on the adjudged accounts, defendants appeal.    Affirmed.

In September, 1882, the parties to this action, in the city of New York, entered into a written contract, by which they agreed to sell on joint account 70,000 boxes of firecrackers, to be shipped from China.    The defendants agreed to advance the money necessary for the venture, and to furnish said firecrackers to the joint account at cost of importation, and to make no charge for funds advanced.    They were, however, to be paid two cents per box for guarantying importation.    The plaintiffs were to attend to selling the goods in the market without commission.    This contract, although limited to 70,000 boxes, was in its main features afterwards extended to other importations which were received and sold during the years 1884, 1885, and 1886.    The proceeds of sales were paid to defendants, who from time to time furnished to the plaintiffs accounts of sales for each importation, and from time

to time accounts current. In the accounts rendered, the joint account was debited with the firecrackers at what purported to be the cost of importation and with all the other items of expense incurred and paid, and it showed the result of each shipment, whether a profit or a loss. In each instance in which said account showed a profit the plaintiffs' share thereof was paid to and accepted by them, and not until the month of June, 1886, did they question in any way the correctness of any of the charges in the accounts. There were at that time, according to the accounts rendered by the defendants, several thousand dollars due to them from the plaintiffs, for which demand of payment had been made. Then, for the first time, the plaintiffs disputed the accuracy of the charges of cost of importation, and claimed that the sum charged in the case of every shipment was in excess of the actual cost thereof, and that, on a proper statement of the account, the defendants were indebted to the plaintiffs. Thereafter this action was brought for an accounting. Upon the trial, it appeared that, in the ordinary course of business, many of the firecrackers were sold before arrival; and, in order to make such sales, it was essential for the plaintiffs to know the probable cost of importation. It was conceded by the plaintiffs that it was impossible for the defendants to do more than estimate the cost until several months after arrival. The custom of the business was for the defendants to make an estimate of the cost of importation, and advise plaintiffs thereof, who thereupon proceeded to sell the goods. This estimated cost was thereupon, with the knowledge of the plaintiffs, charged by the defendants to the joint account. It also appeared that, in addition to the joint account, the defendants kept upon their books another account, denominated "Our Account," to which was credited the estimated cost, and to which was debited the actual cost, of the goods as finally ascertained. Although the joint account showed a loss upon about one-half of the importations, "Our Account" in each instance showed a profit, in which the plaintiffs had not been permitted to share, but which was retained by the defendants. This fact was not known to the plaintiffs until the trial. The trial court decided that only the actual cost of importation was, under the agreement, chargeable to the joint account, and that the accounts as rendered by the defendants were false and fraudulent. The accounts were thereupon restated, and showed a balance of a few hundred dollars due to the plaintiffs, for which judgment was entered.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

William D. Guthrie, for appellants.

Frederic A. Ward, for respondents.

BROWN, P. J. It is the contention of the appellants that the testimony failed to prove any fraud on their part, and that, consequently, the accounts could not be reopened. This contention rests upon two propositions: First, that the parties intended to deal with each other upon the basis of an estimated price of importation of the firecrackers, and that such was the practical construction put upon the contract; second, that the accounts rendered by the defendants to the plaintiffs constituted agreements, within the rules of law applicable to accounts stated, and that the plaintiffs, under the facts proven, became and were liable for the balance thereon appearing to be due to the defendants.

The latter proposition really depends upon the first. The fraud was alleged to consist in the intentional overstatement of the actual cost of importation. If that charge is not proven, the plaintiffs' case must fail. Whatever the plaintiffs knowingly assented to they must abide by, and if, notwithstanding the express language of the contract, they gave their consent, either expressly or im-

pliedly, that the cost of importation as calculated and estimated by the defendants in advance of the shipment should, without readjustment, be paid to the defendants from the proceeds of sales, they cannot now be permitted to withdraw that consent. The language of the contract must, in such a case, be held to be modified in accordance with such consent, and the accounts between the parties must be stated upon that basis. To give, however, an account rendered the force of an account stated, because of silence on the part of the person receiving it, the circumstances must be such as to justify an inference of assent on his part to its correctness. Lockwood v. Thorne, 18 N. Y. 285; Quincey v. White, 63 N. Y. 370. The plaintiffs knew that the cost of importation furnished to them in the first instance was an estimate, and they also knew that that estimated cost was, in the first instance, charged to the joint account by the defendants. When, therefore, they received the account sales, they had an opportunity to observe, and must be presumed to have known, that the profit or loss shown on the account as the final result of the shipment had been calculated on the basis of a cost of importation, which was the same as had been estimated in the first instance. And, having received several of these accounts, in which always the cost of importation was stated at the estimated cost, and having accepted their share of the profits as therein stated, the inference, in the absence of any other evidence, would, I think, be permitted that they assented to the adjustment of the account on that basis. But the inference drawn from the failure to object to an account under such circumstances as here exist is not a conclusive one. It is prima facie proof only of an account stated. The defendants have lost nothing by it, and their relation to the plaintiffs, as it would exist under the express terms of the agreement, has not been altered to their disadvantage by the plaintiffs' acceptance of their share of the profits tendered them.

There are many circumstances in this case which sustain the conclusion that the plaintiffs did not intend to, and did not actually, consent that the defendants should retain from the proceeds of sale more than actual cost of importation. It appears that prior to the execution of the agreement of September, 1882, the parties had been engaged in importing and selling firecrackers under another agreement, dated February 1, 1882, wherein it was provided that the basis of profit was to be calculated on a price to be agreed upon, "which was to be as near the actual cost price as could be obtained." The change of language in the September agreement is significant, and it is very plain, we think, that the parties intended when the September contract was made to substitute the actual, instead of the estimated, cost, as the basis on which to calculate the profits. The main purpose of the contract was an equal division of the actual profits and losses. The defendants were old and experienced importers, and the plaintiffs young men, just about entering upon their business careers. It is not surprising that for the first few shipments the plaintiffs relied explicitly upon the statement furnished by the defendants, or that they did not

inquire why it was that the actual cost appearing in the accounts rendered corresponded exactly with the estimated cost of importation. They may have been satisfied with a substantial compliance with the contract, and the desire to continue what was apparently a profitable venture may have induced them not to question the accuracy of the statements. They had a right to assume, without surrendering any right which they possessed under the contract, that the defendants were honest merchants, and were performing their obligations under the contract with a fidelity equal to their own. But a time did come when there was an explicit statement on the subject. On April 21, 1884, the defendants wrote to the plaintiffs in reference to the cost of the firecrackers, as follows: "By cost to the joint account, we mean the actual cost, without any profit to us." If the plaintiffs at that time had any suspicion that the cost was incorrectly stated in the accounts rendered, this letter was calculated to allay and remove them. At the date of that letter, the record shows that accounts had been rendered for five shipments. They all related to the 70,000 boxes specified in the agreement. Seven other accounts were rendered subsequent to that date, and prior to June, 1886. The inquiry whether the statement quoted from the letter of April 21st was true becomes quite pertinent on the question of fraud. That it was absolutely false is demonstrated beyond a doubt. The account in defendants' books denominated "Our Account" shows that, upon the five importations for which accounts had been then rendered, the actual cost was about $3,665 less than the estimated cost, and this sum the defendants had appropriated absolutely. The total actual profits which had been appropriated by the defendants at that date were about $6,636, while the amount paid to the plaintiffs was $2,771. Thus, under a contract in which an actual division of profits was contemplated, the defendants appropriated more than two-thirds of the whole. That this was studiously concealed from the plaintiffs is not denied. Indeed, the intent of the letter from which I have quoted was to conceal it, and misinform and mislead the plaintiffs as to future shipments. This letter speaks of the "first cost of the Oneida," and distinguishes between that and the actual cost, which defendants state will be known when "we know the exchange." A reference to the Oneida statement shows that the cost is charged at 7¼ cents, the exact estimated cost. The inference from the two documents would necessarily be that the actual equaled the estimated cost. The account rendered of the Oneida shipment shows a loss to the joint account of over $1,000. "Our Account" shows a profit to the defendants on importation of $270. The transaction speaks for itself, and is strong evidence of concealment and fraud.

Giving full effect to all that the learned counsel for the appellants has said, there is no testimony in the case which permits the inference that the plaintiffs ever intended to modify the terms of the contract in relation to the division of profits. While the plaintiffs may have been satisfied to take the estimated as the actual cost of the importation, that fact is not of itself sufficient to

modify the contract in relation to the matter of the division of profits. The parties were to share equally. That was the essential thing in the agreement. The defendants were to furnish the capital for the venture, and the plaintiffs to furnish their services in selling the goods. In the result, the division, whether of profit or loss, was to be in equal shares. In its essential features the agreement created a partnership, and the rules of law and good morals demanded the utmost good faith and honesty in the transaction of the business from both parties. The amount of profit extracted from the sales by the defendants by reason of the difference between estimated and actual cost, and the concealment of that fact from the plaintiffs, is sufficient of itself to stamp the accounts rendered as fraudulent. Even if the parties had dealt on the basis of the agreement of February, which the learned counsel for the appellants claims they practically did, the accounts rendered could not be sustained. The difference between actual and estimated cost is too great. The question whether the estimate was as near actual cost as could be obtained, which was the rule under the February agreement, would be one of fact; and no court, I think, would sustain the account in the face of the fact that the estimate invariably exceeded the actual cost, and yielded to the defendants more than two-thirds of the profits of the whole transaction. The fallacy of the appellants' claim rests in the fact that, while the plaintiffs may have known that the accounts were made up on the basis of estimated cost, they did not know the difference between that and actual cost; nor did they know to what an extent the final result of the transaction was effected by the erroneous charges, and how materially their own share of the profits was thereby diminished. The very essence of an account stated is knowledge of the facts which enter into it. It is from that knowledge that the law infers acquiescence, when there is no dispute and no complaint as to the items of the account. But in this case the plaintiffs not only had no knowledge of how they were being deprived of their share of the profits, but the truth of the transaction was carefully and studiously kept from them by the defendants. When mere silence no longer served their purpose, the defendants deliberately and specifically stated that, in the cost charged to joint account, there was no profit to them.

For these reasons, we agree with the conclusion of the trial judge that the accounts rendered were false and fraudulent, and cannot be sustained.

The trial court also decided that the parties agreed that the guaranty of two cents a box for importation should not apply to shipments subsequent to the 70,000 boxes specified in the contract. We are of the opinion that this conclusion has support in the testimony. The defendants testified that this sum was always added to the estimate given to the plaintiffs, and which was charged to the joint account. If this appeared, it would be very strong testimony to sustain the appellants' claim to the allowance of this sum. It is not, however, apparent, from the accounts and statements rendered, that it is true. It nowhere appears as a separate item in any of the ac-

counts.   The inference from the letter of April 21, 1884, is that it was not included in the price there given; otherwise, there would have been a profit to the defendants.   Such is also the inference from Plaintiffs' Exhibit 46 and Defendants' Exhibits 28 to 33.   At least, it is impossible for us to determine from these statements that the charge was made.   The respondents' contention is sustained by the testimony of Staudinger, and by facts and circumstances which we do not deem it necessary to refer to in detail.   There was very much in the manner in which the appellants treated this whole transaction which tended to discredit their evidence, and impugn their honesty; and it was for the trial court to determine to what extent it would credit their testimony.   We are not exactly satisfied that the conclusion reached upon this branch of the case was the correct one, but feel compelled, under all the circumstances, giving due effect to the determination of the trial judge, to affirm the conclusion which he reached.                    •

We are of the opinion that the court properly credited to the joint account the profits upon the 33,500 boxes of firecrackers sold to plaintiffs from the first six shipments.   These sales, we think, were clearly sales by the joint account to the plaintiffs, and were properly included in the final adjustment.   In relation to the importations by the "Strathmore" and "Anna," we are of the opinion, however, that they were sales at fixed prices, and not upon commission.   These shipments had no connection with the joint account.   The learned counsel for the respondents concedes so much upon his brief.   They were sales either at a fixed price or upon a commission.   The testimony to which we are referred, which it is claimed shows that the sales were on a commission, consists of two letters,—one from defendants to the plaintiffs, under date of June 15, 1885, in which mention is made of a 1 per cent. commission having been given to the plaintiffs at some time prior to that date, and a reply thereto by plaintiffs under date of July 10th.   It does not appear that these letters referred to the "Strathmore" and "Anna" shipments.   The respondents' counsel, to sustain his claim, quotes from the letter of June 19th this sentence, "We have substituted the cost price here * * * for the China cost," and from this argues that there was a sale upon a commission on the cost of importation.   But the nature of the transaction is not left to inference or conjecture.   It appears very clearly in the correspondence between the parties, under the dates, respectively, of April 25, 26, and 28, and May 7, 15, 16, and 17, 1884.   Thus, on April 28th plaintiffs wrote to the defendants, "You may cable the following order: * * * 30,000 boxes, 40/72, at 81½; 20,000 boxes 40/64, at 75.   Cash ten days from average date into store."   On the same date, defendants acknowledged receipt of the order, stating, "We have telegraphed to China your order." May 15th, defendants wrote to plaintiffs, saying the order had been executed for shipment in May or June by sailing vessel, and in August by steamer.   They say: "We charge you with 30,000 boxes, 40/72, at 81½c., and 20,000 boxes, 40/64, at 75c.   Terms: Cash ten days from average date of landing."   And, on May 16th, plaintiffs wrote to defendants: "We beg to confirm sale to us * * * 40/64,

75c. per box; 40/72, 81½c. per box. Cash ten days from average date of goods going into store. In case * * * any extension of time on payments of interest, at rate of 6% per annum to be added." These letters show conclusively, we think, that the quoted expression from the letter of June 15, 1885, had no reference to this transaction. That letter was written more than a year after the goods were ordered. The goods were due to arrive in New York in October, 1884; and the statement of the cost of the "Anna" shipment, put in evidence by the plaintiffs as Exhibit No. 56, shows that the drafts for the goods were paid by the defendants in December, · 1884, and January, 1885. The correspondence shows the sale to have been at a fixed price, and not for a commission on actual cost. The items as to these shipments should therefore be eliminated from the account altogether, except the charge for extra freight by steamer, which was properly allowed to the defendants. My associates do not, however, agree with my conclusion in reference to the shipments upon these two vessels, but are of the opinion that there was evidence to sustain the conclusion of the special term, and I yield to their judgment.

We have considered the other objections made by the appellants, but none of them require notice.

The judgment must be affirmed, with costs. All concur.